UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PEDRO VELEZ,                                    Case  No. 09-10519

        Plaintiff,                              Denise Page Hood
vs.                                             United States District Judge

MICHIGAN DEPARTMENT                             Michael Hluchaniuk
OF CORRECTIONS, et al.,                         United States Magistrate Judge

        Defendants.

_____/

## REPORT AND RECOMMENDATION
## <u>DEFENDANTS' MOTIONS TO DISMISS (Dkt. 21, 27)</u>

## I.   PROCEDURAL HISTORY

Plaintiff filed a civil rights complaint on February 12, 2009.  (Dkt. 1).  He

alleges that defendants violated his constitutional rights by being deliberately

indifferent to his serious medical needs.  *Id.*  District Judge Denise Page Hood

referred this matter to the undersigned for all pretrial purposes.  (Dkt. 4).  Plaintiff

was permitted to amend his complaint and was ordered to submit an amended

complaint by May 15, 2009.  (Dkt. 14).  Plaintiff failed to do so.  Thus, as set forth

in the January 5, 2010 order, the original complaint dated February 12, 2009 is the

controlling complaint in this matter.  (Dkt. 40).

Defendants Correctional Medical Services, Inc. (CMS) and its employees,

defendants Joseph Burtch, D.O., and Howard Tyree,  filed a motion to dismiss

plaintiff's complaint on June 15, 2009. (Dkt. 21). Plaintiff filed a response on June 22, 2009. (Dkt. 24). Defendants Michigan Department of Corrections (MDOC) and Terry Malloy filed a motion to dismiss or for summary judgment on July 15, 2009. (Dkt. 27). Plaintiff was ordered to respond to this motion by August 7, 2009. (Dkt. 28). Plaintiff failed to file a response to this motion. This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motions to dismiss be **GRANTED** and that plaintiff's claims against them be **DISMISSED**.

## II.   STATEMENT OF FACTS

A.   <u>Plaintiff's Complaint</u>

Plaintiff asserts an Eighth Amendment deliberate indifference claim pursuant to 42 U.S.C. § 1983 and state law gross negligence claims in six causes of action based on allegations of inadequate medical care for a hernia. (Dkt. 1). Plaintiff alleges he sought treatment for a hernia in February, 2008. (Dkt. 1, ¶ 6). He claims the hernia developed after surgery to remove his spleen in September, 2007. (Dkt. 1,¶ 16). He alleges he then sought treatment for heartburn, which he claims was related to the hernia. (Dkt. 1, ¶ 8). He claims P.A. Tyree and Dr. Burtch did not provide treatment for either condition. (Dkt. 1, ¶¶ 10, 12). He admits that a surgical consult was sought, and that he was provided with a support

garment.  (Dkt. 1, ¶¶ 13-14).  Plaintiff alleges Dr. Burtch and P.A. Tyree should

have provided adequate pain management for the pain from the hernia.  (Dkt. 1, ¶

17).  Plaintiff also raises a claim of gross negligence.  (Dkt. 1, ¶¶ 23-28).

     B.    <u>Plaintiff's Grievance</u>

Plaintiff filed and completed the prison grievance process on MDOC

Grievance No. SRF-08-11-1292-12Z1 regarding his health care treatment.  (Dkt.

1).[1]  He filed a step I grievance on October 30, 2008.  (Dkt. 21, Ex. C).  Plaintiff

wrote:

> This grievance stems from the constant disregard for my
> health and medical care.  I continue to experience severe
> pain in my abdomen.  My Eighth Amendment has been
> violated repeatedly. I continue to be denied adequate
> medical care.  Prisoner Velez had surgery on 9-5-07.
> Prisoner spleen was removed.  As a result of the surgery
> it was discovered in February of this year (2008) that
> prisoner has a hernia from the surgery.  Prisoner has sent
> several kites to health services complaining about the
> pain he continues to experience.  Prisoner Velez has a
> bulge in his abdomen that sticks out approximately 14
> inches.  Health services prescribes colace and motrin for
> the pain to only have additional pain in his abdomen.
> The motrins upsets prisoners abdomen.  Velez bowel
> movement is very discomforting to his stomach.  The
> pain is excruciating to his stomach during his bowel
> movement.  Each time Velez was seen by SRF Health
> services officials state to him that there's nothing
> seriously wrong with him and there's nothing they could

---

[1] Plaintiff has completed the MDOC grievance process on only one other
grievance, which he acknowledges is not applicable to this action.  (Dkt. 21-5; Dkt.
24, pp. 2, 3).

> do to help him.  Velez was seen by Dr. Burtch
> concerning the pain and hernia.  Dr. Burtch stated to
> Velez that he feels Velez was in need of serious medical
> care based on his diagnosis. He stated that his hands is
> tied because Lansing continues to deny Velez any
> treatment; thus subjecting him to pain and suffering.
> CMS (1) has demonstrated a disregard for a serious
> medical (2) officials have knowledge of need (3) officials
> failure to provide treatment and (4) By denying prisoner
> treatment CMS is creating more causation and injury to
> prisoner Velez. Prisoner need medical care now! Prisoner
> resolution is to have treatment and to have health services
> cease disregarding him as a non-issue.

(Dkt. 21, Ex. C; Dkt. 1).  The step I response is dated November 19, 2008 and

states that the chart review conducted by Dr. Stieve on November 3,2008 noted

that the hernia was reducible, that the patient was educated on the risks of a hernia,

and that the patient was aware that a hernia repair was not medically necessary.  It

was noted that plaintiff had an abdominal binder and would be scheduled with

nursing to evaluate the need for a new one.  It was observed that the patient was

not wearing the abdominal binder during the interview meeting.  A chart review

was placed with the medical provider to review pain medication needs and the

grievance was otherwise denied.  *Id.*

Plaintiff filed a step II appeal on November 25, 2008.  (Dkt. 21, Ex. C).  The

step II response concluded that plaintiff's grievance had been appropriately

addressed at step I.  In addition:

[M]edical record review indicates patient was seen and evaluated by the Medical Provider on November 25, 2008, for his abdominal incisional hernia. "Hernia remains easily reducible and supported adequately with binder. No longer having constipation since starting Colace." His pain medication needs were assessed, and he was offered either Tylenol or Motrin. Patient refused pain medication offer and left clinic. There have been no subsequent health care requested received by health care since that visit.

Patient is encouraged to follow recommendations of care and contact SRF Health care should symptoms change or worsen, so that he can be evaluated.

(Dkt. 21, Ex. C).

Plaintiff filed a step III appeal in which he claims that the offer of Tylenol or Motrin was inadequate because it failed to take into account that Motrin upsets his stomach and he did not want to take Tylenol until he was given proper care (i.e., surgery) because of the liver damage. He also says that his constipation did not resolve with the Colace and he was given milk of magnesia after the November 25 visit to healthcare. Plaintiff also requested to see a specialist and argued that a nurse or physician assistant was not suitable to make a medical judgment regarding plaintiff's complaints. He further wrote that he did not think it was normal to see bowel movement visually from the outside of one's stomach and the same remedies of Colace, Tylenol, and an abdominal binder were insufficient. (Dkt. 21, Ex. C). The step III response upheld the previous denials and concluded that

"[d]isagreement with the medical judgment of the Medical Practitioner does not support allegations of denial of care."  *Id.*

C.   Grievance Procedure

In conjunction with their dispositive motion, the CMS defendants submitted a copy of the applicable MDOC policy directive that sets forth the grievance procedures in effect at the time plaintiff submitted his grievance.  (Dkt. 21, Ex. D, MDOC Policy Directive 03.02.130, eff. 7/9/07).  The MDOC grievance procedure explains that "[g]rievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures."  (Dkt. 21, Ex. D, p. 1, § E).  The grievance procedure also requires that the information provided "is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how)" and that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included."  (Dkt. 21, Ex. D, p. 4, § R).  Grievants are encouraged, however, to limit the information in the grievance form and to state the issue briefly.  *Id.*

Within five business days of attempting to resolve a dispute with staff, a prisoner may send a completed grievance form to the Step I Grievance Coordinator designated for the facility.  (Dkt. 21, Ex. D, § V, p. 4).  And, if the merits of the grievance are addressed, the grievant must be interviewed in order to "explain the

grievance more completely" and to enable the respondent to "gather any additional information needed to respond to the grievance." (Dkt. 21, Ex. D, p. 5, § Y). If the grievant is not interviewed, the reason must be included in the written response to the grievance. (Dkt. 21, Ex. D, p. 5, § Y). In response to the Step I grievance, the respondent must identify all policies, rules, or procedures that are related to the issue or conduct grieved. (Dkt. 21, Ex. D, p. 5, § Z). At Step I, the Grievance Coordinator "shall ensure that a thorough investigation was completed for each Step I grievance accepted," that the response was reviewed by the appropriate supervisor, and that a copy of the response is provided to the grievant by the due date. (Dkt. 21, Ex. D, p. 5, § AA).

If a grievant is not satisfied with the Step I response or does not receive a timely response, he may request an appeal of the Step I grievance to Step II. (Dkt. 21, Ex. D, p. 5, § BB). If the Grievance Coordinator determines that the Step II grievance should be accepted, he must then assign an appropriate respondent. *Id*. The MDOC grievance procedure sets forth the appropriate respondents for Step II, depending on the location and subject matter of the grievance. (Dkt. 21, Ex. D, pp. 5-6, § DD). For example, if a grievance alleges inadequate medical care, the Regional Health Administrator or designee is the appropriate Step II respondent. *Id*. The Grievance Coordinator must then ensure that "any additional investigation

was completed as necessary for each Step II grievance accepted....” (Dkt. 21, Ex. D, p. 6, § EE).

If a prisoner is not satisfied with the Step II response, he may file a Step III grievance with the Grievance and Appeals Section. (Dkt. 21, Ex. D, p. 6, § FF). A Step III appeal must be sent to the Grievance and Appeals Section within 10 business days after the prisoner receives the Step II response, or within 10 business days after the response was due. *Id.* If a Step III grievance involves medical care or treatment, the Grievance and Appeals Section must forward any such grievance to the Bureau of Health Care Services (BHCS), which must ensure that the grievance is investigated and a timely response provided. *Id.* The Manager of the Grievance and Appeals Section must ensure that any additional investigation is completed as necessary for Step III. *Id.*

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires “‘a short and plain statement of the claim showing that the pleader is entitled to relief,’ in order to ‘give the defendant fair notice of what the ... claim is and the grounds upon which it rests.’” *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007), quoting, *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

The Supreme Court recently raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that had prevailed for the last few decades. *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 2009 WL 2497928, *2 (6th Cir. 2009), citing, *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009); *see also Twombly*, 550 U.S. at 555. In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. The Sixth Circuit observed that this new standard is designed to screen out cases that, while not utterly impossible, are "implausible." *Courie*, at *2. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. And although the Court must accept all well-pleaded factual allegations in the complaint as true, it need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555, quoting, *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Iqbal*, 129 S.Ct. at 1949. The Sixth Circuit noted that "[e]xactly how implausible is 'implausible' remains to be seen, as such a malleable standard will have to be worked out in practice." *Courie*, *2.

Report and Recommendation
Motions to Dismiss
*Velez v. MDOC*; 09-10519

Where a plaintiff is proceeding without the assistance of counsel, the court is still required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *See e.g. Simmons v. Caruso*, 2009 WL 2922046 (E.D. Mich. 2009), citing, *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Thus, the Court must still read plaintiff's *pro se* complaint indulgently and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson v. Pardus*, 127 S.Ct. at 2200 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.).[2]

B.    Exhaustion of Administrative Remedies

1.    Legal standards

In *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007), the United States Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." *Id*. at 923. The Court defined the level of detail necessary to exhaust as simply

---

[2] Plaintiff attached his grievances and other records to his complaint and thus, consideration of them in this Report and Recommendation does not turn defendants' motions into motions for summary judgment, as would normally be the case when the Court considers materials outside the scope of the pleadings. Fed.R.Civ.P. 12(d).

compliance with the administrative grievance process. *Id*. Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id*. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden-the plaintiff on a claim for relief of the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

2.     Purpose of exhaustion requirement.

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2385, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.  The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 2387, quoting, *Porter v. Nussle*, 534 U.S. 516, 525 (2002) (alteration omitted).  Exhaustion serves a dual purpose:  it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 2387-88.  Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 127 S.Ct. at 915-16.

Before *Jones* invalidated the additional exhaustion procedures placed on prisoner civil rights suits by the Sixth Circuit, a prisoner was required to "file a grievance against the person he ultimately seeks to sue," and exhaust the claim as to each defendant associated with the claim. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). The critical holding in Jones was that the PLRA does not impose additional exhaustion procedures or requirements outside the prison's grievance procedures. As observed in *Jones*, the primary purpose of a grievance is to alert prison officials of a particular problem. *Jones*, 127 S.Ct. at 923; *see also Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) ("[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.").

3.    Defendants Burtch and Tyree[3]

Defendant Burtch argues that, while he is identified in the grievance, plaintiff's claims against him are not exhausted because plaintiff did not actually complain about anything that Burtch did or did not do. Defendant Tyree asserts that plaintiff failed to identify him in the grievance at all, which failed to comply with the grievance procedure, and his claims against Tyree are not exhausted. In

---

[3] Defendant CMS admits in its moving papers that plaintiff's claim against it has been exhausted. (Dkt. 21, p. 5) ("The grievance does appear to grieve CMS.... The grievance was grieved through Step III.").

support of their arguments, these defendants cite several cases standing for the proposition that a failure to identify in a grievance a named defendant in a § 1983 lawsuit is a failure to properly exhaust under *Woodford*. The undersigned does not find the cases cited by defendants to be persuasive.

The first two cases, *Cadogen v. Vittitow*, (E.D. Mich. 2007) and *VanDiver v. CMS*, (E.D. Mich. 2007), both involved grievances that were rejected for failure to comply with the grievance procedure and are, therefore, easily distinguished from the present circumstances. The third case, *Sullivan v. Kasajaru*, (6th Cir. 2009) is equally unpersuasive, not simply because it is unpublished, but because it is completely unclear from the two paragraph opinion whether the grievance at issue was rejected at any point in the process, and the contents of the grievance are unknown. The last cases are *Vartinelli v. Cady*, (E.D. Mich. 2009) and *Badon v. Robin*, 2009 WL 465775 (W.D. Mich. 2009), both of which involved defendants who were not identified in the grievances, but who were authors of responses to grievances submitted by the prisoners. This circumstance is also distinguishable from the present case.

The pertinent question is whether plaintiff's grievance would have given reasonable notice that these defendants were involved in the matter being grieved. As to these defendants, plaintiff's grievance expressed his complaints about the ongoing treatment of his surgical hernia over the course of 10 months. It named

"SRF Health service officials," "Dr. Burtch," "health services," and "CMS." The undersigned suggests that identifying defendant Burtch by name two times in the grievance was sufficient to put the correctional facility on notice that plaintiff was grieving medical care in which Burtch was involved.

The undersigned further suggests that the failure to reject the grievance at issue is a waiver of any procedural defect, including the failure to specifically name all the individuals involved in the medical care about which plaintiff complained in his grievance. After *Jones*, despite the requirement of the updated MDOC policy directive to name those involved in the issue being grieved, in many circumstances, a prisoner's failure to specifically name individuals who are later named in a lawsuit will not be deemed a failure to exhaust. For example, in *Grear v. Gelabert*, 2008 WL 474098, *7-8 (W.D. Mich. 2008), the prisoner named "health care staff" in a grievance. Prison officials did not, however, reject the grievance for failure to identify the specific persons about whom he was complaining. *Id*. at 8. The court concluded that, because prison officials did not rely on this default by rejecting the grievance, the claim was exhausted as to *all* health care staff, including those named in the lawsuit. *Id.*

Just as in *Grear*, plaintiff's Step I grievance was not rejected as unduly vague or for a failure to identify specific individual dental and medical personnel and the respondent addressed the grievance on the merits. *See also Contor v.*

*Caruso*, 2008 WL 878665, *8 (W.D. Mich. 2008) (Prison officials cannot rely on

the procedural rule barring review of a grievance where the grievance was not

rejected at any step of the process for failure to identify specific CMS personnel).

Nothing in *Jones v. Bock* or *Woodford* altered the well-established principle

that when merits of a grievance are addressed, any claimed procedural defect not

raised during the administrative process is waived and cannot form the basis of a

failure to exhaust defense.  This issue was examined in circumstances where the

updated MDOC policy directive governed and the inmate failed to identify all

persons later sued in the underlying grievance.  *Baker v. Vanderark*, 2007 WL

3244075 (W.D. Mich. 2007).  In *Baker*, the defendants argued that the plaintiff

failed to exhaust his administrative remedies with respect to certain individuals

who were not named in his grievance, but who were later named in his lawsuit.  *Id.*

at *6.  The court distilled the defendants' argument as follows:  "In effect,

Defendants argue this Court may conclude a grievant did not exhaust his or her

administrative remedies even if the MDOC addressed the issue on the merits."  *Id*.

The court rejected this argument and concluded that it was inconsistent with the

policies underpinning *Woodford*.  Under the PLRA and *Woodford*, "both parties

are obligated to raise objections in the administrative proceedings in order for the

issue to be properly before a reviewing court."  *Id.* at *7.  If the Court accepted

defendants' position, a prisoner would never have notice that his grievance did not

comply with the grievance procedure.  Further, accepting defendants' position would place the burden of raising an objection only on a prisoner and not on the persons administering the grievance process.  This interpretation is inconsistent with the exhaustion doctrine and the purpose of the PLRA:  "[w]hen prison officials fail to raise procedural problems during the grievance process, too many suits make it to federal courts on a record where the procedural problem has not been adequately developed."  *Id.* at *7.

The *Baker* court also concluded that a "fair interpretation of PD 03.02.103 gives the Grievance Coordinator discretion to accept or reject a grievance that fails to identify specific defendants on the basis of the grievance being vague."  *Id.* Rather than dismissing the grievance on a procedural issue and allowing the prisoner to address any procedural concerns, the defendants opted to address the grievance on the merits.  *Id.* at *7.  And, if needed additional information was required, the policy provides that the interview is the time to gather that information.  The court concluded that "[b]y accepting the grievance, investigating the claim, and responding on the merits all the way through Step III of the procedure, [the defendants] cannot now raise a procedural problem for the first time in this Court."  *Id.*

Other courts, including this district, have reached the conclusion that *Woodford* is not controlling when a grievance was addressed on the merits.  *See*

*e.g.*, *Broder v. Correctional Medical Services, Inc.*, 2008 WL 704229, *2 (E.D. Mich 2008) ("Where the prison officials themselves overlook a prisoner's failure to comply with procedural requirements and address the prisoner's grievance on the merits, the procedural default rule established by *Woodford* is inapplicable."); *see also Johnson v. Beardslee*, 2007 WL 2302378 (W.D. Mich. 2007) (finding exhaustion satisfied because MDOC accepted the grievance and addressed it on the merits rather than rejecting it or denying it as untimely); *Ellis v. Vadlamudi*, 568 F.Supp.2d 778, 785 (E.D. Mich. 2008) (Exhaustion held sufficient where on-going medical care complaint at issue and grievance addressed on merits). As set forth in the grievance procedure, a grievance may be rejected if it is too vague (which includes the failure to name all persons involved). Since the grievance at issue was not rejected, and it was addressed on the merits, any procedural defect as to the lack of specific identities of the "CMS" personnel or "SRF Health services officials" was waived. Thus, there is no basis to dismiss the claims against defendants Burtch and Tyree based on a failure to exhaust administrative remedies.

B.    <u>Deliberate Indifference</u>

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims of cruel and unusual confinement."  *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981).  Included as a type of conduct that violates the Eighth Amendment is a prison official's deliberate indifference to a prisoner's serious medical needs.  *See e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).  To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one.  He must show that he had a serious medical need and he must show that a defendant, being aware of that need, acted with deliberate indifference to it. *Wilson v. Seiter*, 501 U.S. 294, 300 (1991).  In evaluating plaintiff's complaint for purposes of a motion to dismiss, it is important to emphasize that he need not *prove* his claims at this stage, but rather, his complaint, viewed indulgently, need only have "enough factual matter (taken as true) to *suggest* the required element." *Phillips*, 515 F.3d 224 at 234 (internal quotation marks omitted; emphasis added).

A medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention.  *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.), cert. denied, 486 U.S. 1006 (1988).  A serious ailment requires immediate attention or is potentially life-threatening: "A

'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citation omitted), overruled on other grounds, *WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997). The fact that a plaintiff endured unnecessary pain and suffering is sufficient for an Eighth Amendment claim. *Id.* In *Westlake v. Lucas*, the Sixth Circuit held that "a prisoner who is needlessly allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of his suffering." *Westlake*, 537 F.2d at 859.

Based on these standards, at a minimum, plaintiff has alleged the existence of a "serious medical need," sufficient to survive a motion to dismiss, given his allegations of an untreated incisional hernia, the unaddressed pain issues, and the allegations that surgery was necessary and recommended to address his condition, but not performed. Thus, the allegations in plaintiff's complaint, taken as true, satisfy the first element of *Wilson*.

The second element of *Wilson* requires allegations that these particular defendants (Burtch and Tyree) acted with deliberate indifference. "Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent in the form of "malicious" or "sadistic"

action.  *Farmer v. Brennan*, 511 U.S. 825, 861 (1994); *see also Estelle*, 429 U.S. at

105-106 (a complaint that a physician has been negligent in diagnosing or treating

a medical condition does not state a valid claim under the Eighth Amendment;

"medical malpractice does not become a constitutional violation merely because

the victim is a prisoner"); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995)

(deliberate indifference is the equivalent of "criminal recklessness, which requires

a subjective showing that the defendant was aware of the risk of harm"); *Gibson v.*

*Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("[o]bduracy or wantonness, not

inadvertence or good faith error, characterizes deliberate indifference").

As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must

allege acts or omissions sufficiently harmful to evidence deliberate indifference to

serious medical needs."  *Id.* at 106.  An allegation of mere negligence in diagnosis

or treatment is not actionable under § 1983.  *Estelle v. Gamble, supra*; *Byrd v.*

*Wilson*, 701 F.2d at 595 n. 2.  A delay in access to medical attention, however, can

violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton

infliction of pain.'"  *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d

1176, 1187 (6th Cir. 1994), quoting, *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th

Cir.) (*per curiam*), cert. denied, 496 U.S. 928 (1990).  Further, a claim of

inadequate medical treatment may state a constitutional claim if the treatment

rendered is "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860-861 (6th Cir. 1976).

Plaintiff alleges he sought treatment for a hernia in February, 2008.  (Dkt. 1, ¶ 6).  He claims the hernia developed after surgery to remove his spleen in September, 2007.  (Dkt. 1, ¶ 16).  He alleges he then sought treatment for heartburn, which he claims was related to the hernia.  (Dkt. 1, ¶ 8).  He claims defendants Tyree and Burtch did not provide treatment for either condition.  (Dkt. 1, ¶¶ 10, 12).  He admits, however, that a surgical consult was sought, and that he was provided with a support garment.  (Dkt. 1, ¶¶ 13-14).  Plaintiff alleges defendants Burtch and Tyree should have provided adequate pain management for the pain from the hernia.  (Dkt. 1, ¶17).  In this case, where plaintiff acknowledges that defendants provided some pain management, a support garment, and that he was referred for further surgery (Dkt. 1, ¶¶ 13, 16-17), plaintiff has failed to allege that defendants acted with a sufficiently culpable mind.  *Wilson*, 501 U.S. at 302.  Thus, the undersigned suggests that defendants' motion to dismiss be granted.

D.   Plaintiff Fails to State a Claim Against CMS, the MDOC, and Malloy.

In order to state a cause of action under 42 U.S.C. § 1983, two essential elements are required: (1) there must be conduct committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.

42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527 (1981); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Jones v. Duncan*, 840 F.2d 359, 361-62 (6th Cir. 1988). If either element is missing, then a claim under § 1983 has not been stated. *Christy v. Bandlett*, 932 F.2d 502, 504 (6th Cir. 1991). In the present motion, there is no challenge to the claim that defendants were acting under color of state law.

Defendants correctly state that a plaintiff bringing an action pursuant to § 1983 may not base liability on a theory of *respondeat superior* or vicarious liability. *Moore v. Michigan Dep't of Corrections*, 2007 WL 3124649, *4 (W.D. Mich. 2007), citing, *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 98 (1978). Plaintiff's claims, however, expressly allege that defendants MDOC, CMS, and Malloy (the Regional Health Care Administrator) are vicariously liable for the torts of their employees or agents. (Dkt. 1). Under *Monell*, such liability can only be found in situations where a deprivation of constitutional rights occurs as a result of an entity's policy, custom, or practice. *Raub v. Correctional Medical Services*, 2008 WL 160611, *2 (E.D. Mich. 2008), citing, *Monell*, at 694. Moreover, there must be an "affirmative link between the policy and the particular constitutional violation alleged." *Raub*, at *2, quoting, *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). "There must be more than merely a right to control employees, as plaintiff must show that [the defendant] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending

employees." *Moore*, at *4, citing, *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Defendants claim that plaintiff's complaint does not identify a specific "policy" instituted by any of them that plaintiff claims violated his constitutional rights. The undersigned agrees that plaintiff's complaint is insufficient to state a policy, pattern, or practice claim against defendants. Rather, plaintiff only makes conclusory and vague allegations that his alleged mistreatment was the result of a cost-cutting policy instituted by CMS, MDOC, or Malloy. Even construing plaintiff's complaint indulgently, he has failed to allege that any pattern, policy, or practice of defendants is implicated by his claims. As such, plaintiff's allegations against these defendants, at best, merely "create speculation" or a "suspicion" of a legally cognizable claim and his claims against defendants CMS, MDOC, and Malloy should be dismissed. *See Bredesen* and *Twombley*, *supra*.

E.     Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution bars suits against states and their departments or agencies in federal court. *Alabama v. Pugh*, 438 U.S. 781 (1978); *Quern .v Jordan*, 440 U.S. 332 (1979). A suit against a public official in their "official capacity" is a suit against the public entity that employs the public official. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008), citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The MDOC, as

a State agency, is not subject to suit under 42 U.S.C. § 1983 based on sovereign immunity.  And, to the extent defendant Malloy is sued in her official capacity; that immunity extends to her.  "The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court."  *Id.*  The record does not indicate that the State of Michigan has waived its immunity or otherwise consented to being sued and, therefore, the claim cannot be maintained against defendant in his official capacity.  Thus, the undersigned suggests that plaintiff's claims against the MDOC and defendant Malloy in her official capacity are barred.  While the Eleventh Amendment does not bar suit against defendant Malloy in her individual capacity, the undersigned suggests, as set forth above, that dismissal in her favor, individually, is warranted on other grounds.

F.    State Law Claims

To the extent that plaintiff raises state law claims against any of the moving defendants, the undersigned suggests that this Court decline to exercise supplemental jurisdiction over such state law claims given that all federal claims against these defendants will be dismissed.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Experimental Holdings, Inc. v. Farris*,

503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.").

## IV.   RECOMMENDATION

The undersigned **RECOMMENDS** that defendants' motions be **GRANTED** and that the claims against defendants Tyree, Burtch, Malloy, CMS, and MDOC be **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Administrative Order

09-AO-042.  The response must specifically address each issue raised in the

objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc.  If the Court determines that any objections are

without merit, it may rule without awaiting the response.

Date:  January 25, 2010                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

        I certify that on January 25, 2010, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Julia R. Bell, Brian J. Richtarcik, and Randall A.
Juip, and I certify that I have mailed by United States Postal Service the paper to
the following non-ECF participant(s): Pedro Velez, # 26139-039, FCI Oxford,
Federal Correctional Institution, P.O. Box 1000, Oxford, WI 53952

                                           s/Tammy Hallwood
                                           Case Manager
                                           U.S. District Court
                                           600 Church Street
                                           Flint, MI 48502
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov